# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JUDY KAY PRATHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO. CIV-09-0437-HE |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | ) ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff Judy Kay Prather instituted this action seeking judicial review of the final decision of the Commissioner of the Social Security Administration denying her disability insurance benefits and supplemental security income benefits. Consistent with 28 U.S.C. § 636(b)(1)(B) and (C), the case was referred to Magistrate Judge Valerie K. Couch, who recommends that the Commissioner's decision be reversed and the matter remanded for further proceedings. The magistrate judge found several errors, including the administrative law judge's failure to properly evaluate the opinions of the plaintiff's treating physicians and failure to properly consider the effect plaintiff's breathing treatments would have on her ability to perform substantial gainful employment.

The parties, having failed to object to the Report and Recommendation, waived their right to appellate review of the factual and legal issues it addressed. <u>United States v. One Parcel of Real Property</u>, 73 F.3d 1057, 1059-60 (10th Cir. 1996). *See* 28 U.S.C. § 636(b)(1)(C); LCvR72.1(a). Accordingly, the court adopts Magistrate Judge Couch's Report and Recommendation, **REVERSES** the final decision of the Commissioner and **REMANDS**

the case for further proceedings consistent with the Report and Recommendation, a copy of which is attached to this order.

**IT IS SO ORDERED**.

Dated this __10__ day of September, 2010.

```
                                    _____
                                    JOE HEATON
                                    UNITED STATES DISTRICT JUDGE
```

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JUDY KAY PRATHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-09-437-HE |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF THE SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff, Ms. Judy Kay Prather, seeks judicial review of a denial of disability insurance benefits (DIB) and supplemental security income benefits (SSI) by the Social Security Administration. This matter has been referred for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

I. **Procedural Background**

Ms. Prather protectively filed her applications for DIB and SSI on March 22, 2006. The Social Security Administration denied her application initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. *See* Administrative Record [Doc. #10] (AR) at 35-47. The Appeals Council denied Ms. Prather's request for review. AR 1-3. This appeal followed.

## II. The ALJ's Decision

The ALJ followed the sequential evaluation process required by agency regulations. *See Fisher-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520; 416.920. The ALJ first determined that Ms. Prather had not engaged in substantial gainful activity since the alleged onset date. AR 40. At step two, the ALJ determined that Ms. Prather has the following severe impairments: a seizure disorder, migraine headaches, asthma and hypertension. AR 40. At step three, the ALJ found that Ms. Prather's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 42.

The ALJ next determined Ms. Prather's residual functional capacity (RFC):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a limited range of medium work that includes the following: the ability to occasionally lift 30 pounds, and 15 pounds frequently; she can stand and/or walk for 6 hours out of an 8 hour day; she can sit for 6 hours out of an 8 hour day; she has to avoid concentrated exposure to any extreme heat or cold, or dampness, or wetness; she cannot be in an environment with things like fumes, dust, or poor ventilated areas, and the like.

AR 42. At step four, the ALJ concluded that Ms. Prather is unable to perform her past relevant work as dietary aide or as a worker at a McDonald's restaurant. AR 45. At step five, the ALJ concluded that there are jobs existing in significant numbers in the national economy that Ms. Prather could perform, including assembler of small products, cashier, jewelry sorter, and order clerk. AR 46.

## III. Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the [administrative law judge's] findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## IV. Issues Raised on Appeal

Ms. Prather contends that in formulating her RFC, the ALJ failed to consider the limiting effects of poor concentration, use of a nebulizer, and migraine headaches. The Commissioner contends that the record does not support further restriction of Ms. Prather's RFC.

3

## V. Analysis

### A. Alleged Restrictions from Poor Concentration

Ms. Prather contends that the ALJ erred in failing to properly account for her problems with concentration. On May 5, 2006, Dr. Michael G. Ryan, a neurologist, wrote a letter regarding his treatment of Ms. Prather. Dr. Ryan had treated Ms. Prather since 1978 when she was diagnosed with convulsive seizure disorder and possible complex partial seizures. Dr. Ryan stated that Ms. Prather had not had any definite seizures since 1982, but he also noted that she has concentration problems and thinking problems, and that sometimes she is unable to think of the right words. AR 270. Dr Ryan's observations regarding Ms. Prather's concentration and thinking problems are echoed by Dr. Jay Knapik, a neurologist who began treating Ms. Prather after Dr. Ryan retired. Dr. Knapik noted in his exam of July 31, 2007, that Ms. Prather was slow in her thought processes, but exhibited no dysarthria.[1] Dr. Knapik noted Ms. Prather's borderline IQ of 77. AR 322-323.

The ALJ mentioned both of these opinions in his decision, AR 43-44, but he did not include any resulting limitations in his RFC determination. Additionally, the ALJ did not indicate what, if any, weight he afforded the opinions of these treating physicians.[2]

---

[1] "Dysarthria" is defined as speech that is slurred, slow, and difficult to produce and understand. The condition is attributed to paralysis, weakness, or inability to coordinate muscles of the mouth caused by central or peripheral nervous system damage. *See* Dorland's Pocket Medical Dictionary at 222 (23rd Edition, 1982). Dr. Knapik's negative finding of dysarthria is not, therefore, inconsistent with Dr. Ryan's opinion that Ms. Prather exhibited problems with thinking and concentration.

[2] "When an ALJ rejects a treating physician's opinion, he must articulate specific, legitimate reasons for his decision." *Cowan v. Astrue*, 552 F.3d 1182, 1188 (10th Cir. 2008) (internal quotations and citation omitted).

4

In response to Ms. Prather's argument, the Commissioner "submits that all of the jobs that the vocational expert testified Plaintiff could perform were unskilled." Commissioner's Brief at 8. The Commissioner explains that unskilled jobs "by definition, involves [sic] simple duties that can be learned on the job in a short period of time." *Id.* (*citing* 20 C.F.R. §§ 404.1568(a), 416.968(a)). The Commissioner's reasoning is not persuasive. First, the fact that a job may generally be learned "in a short period of time" does not necessarily support a conclusion that performing that job does not require the ability to concentrate. The VE testified that limitations in the ability to concentrate such that an individual could not maintain a production pace or quota would make the individual unable to maintain employment. AR 83-84. Moreover, this Court "may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself." *Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005). Adopting the Commissioner's reasoning would result in such a post-hoc rationalization. On remand, the ALJ should specify what weight he is affording the opinions of these treating physicians and why. He should also determine whether further restrictions should be added to the RFC based on Ms. Prather's problems with thinking and concentration.

### B. Alleged Restrictions Caused by Use of a Nebulizer

Ms. Prather's medical records are replete with references to her asthma. The ALJ recognized the severity of Ms. Prather's asthma and properly included asthma as a severe impairment at step two. At the administrative hearing, Ms. Prather testified that she uses a

nebulizer[3] three or four times per day to administer breathing treatments which take 15 minutes each. AR 59. The ALJ did not include use of the nebulizer in his hypothetical question to the VE, nor did he include any resulting restrictions in his RFC. This omission is significant.

In *Klitz v. Barnhart*, 180 Fed. Appx. 808 (10th Cir. May 17, 2006), the Tenth Circuit Court of Appeals reversed the Commissioner's final decision and remanded for further development of facts regarding the claimant's use of a nebulizer for asthma and chronic obstructive pulmonary disease. Because of her chronic medical conditions, the claimant was required to use a home nebulizer two or three days per week, two times per day. The ALJ acknowledged the claimant's need to use the nebulizer, but failed to address its effect on the claimant's ability to work if she lacked access to the nebulizer during a full work day or if she could not use it effectively within normal work breaks. The Tenth Circuit thus determined that the ALJ's finding of an RFC for sedentary work was not supported by substantial evidence. *Id.* at 810.

The facts in Ms. Prather's case, viewed with reference to *Klitz*, compel the same result. Nevertheless, the Commissioner argues that no reversal is necessary. The Commissioner acknowledges that a treatment record dated March 22, 2006, notes Albuterol

---

[3]"A nebulizer is '[a] device used to reduce liquid medication to extremely fine cloudlike particles' and is 'useful in delivering medication to deeper parts of the respiratory tract.'" *Klitz v. Barnhart*, 180 Fed. Appx. 808, 810 n. 2 (10th Cir. May 17, 2006) (*quoting* Stedman's Medical Dictionary 1184 (27th ed. 2000)) (unpublished op.).

treatments had been prescribed. Commissioner's Brief at 9; AR 249. According to the Commissioner, the fact that Albuterol is not listed as a medication on two progress notes, one dated July 8, 2006, AR 283, and one dated August 1, 2006, AR 280, is proof that Ms. Prather "did not need daily nebulizer treatments throughout the adjudicated period[.]" Commissioner's Brief at 10.[4] On both of those records, however, Atrovent, another medication which can be administered by nebulizer, is listed. Moreover, the August 1, 2006, record states, "advise Pt continue same meds and breathing." AR 280. This statement is likely a reference to "breathing treatments" as advising Ms. Prather to continue "breathing" would make little sense. Therefore, the absence of Albuterol on the list of medications on two medical records does not prove Ms. Prather was in no need of nebulizer treatments.

It is obvious that the ALJ did not include the Commissioner's current explanation in the final decision. As discussed above, this Court "may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself." *Grogan v. Barnhart*, 399 F.3d at 1263. The Commissioner's decision should be reversed and remanded for further consideration of the effect Ms. Prather's use of a nebulizer for breathing treatments would have on her ability to perform substantial gainful employment.

---

[4]The Commissioner states as further evidence a progress note dated August 10, 2006, which the Commissioner quotes as stating "started albuterol 1 wk ago." Commissioner's Brief at 10. The Commissioner is mistaken. The note does list Albuterol among Ms. Prather's medications, but the note states, "Pt. says *symptoms* started about 1 wk ago." AR 279 (emphasis added).

## C. Alleged Restrictions Caused by Migraine Headaches

Ms. Prather further contends that the ALJ erred in failing to include limitations resulting from migraine headaches. This issue would not, standing alone, require further proceedings.

At step two of the sequential evaluation, the ALJ included "migraines" in the list of Ms. Prather's severe impairments. AR 40. No testimony regarding migraine headaches was given at the hearing, however, and references to headaches in the medical records are limited. On September 18, 2005, Ms. Prather went to the Memorial Hospital of Texas County complaining of migraine and back pain. She also reported feeling that she might be on the verge of a seizure. She was given pain medication and released. AR 227-228. Another reference to a headache is in a record generated by Dr. Pracht dated December 9, 2005, which described Ms. Prather's headache as affecting the "R[ight] frontal part of head. Patient had headache on 7th also. No light sensitivity. Sl [slight] nausea. Noise doesn't bother head much." AR 255.[5] The Commissioner's contention that Ms. Prather failed to provide sufficient evidence to prove limitations related to migraine headaches is persuasive. The ALJ did not err in failing to include further limitations reducing her ability to work based on migraines.

---

[5] Sensitivity to light and severe nausea are hallmarks of migraine headaches. *See* Dorland's Pocket Medical Dictionary at 422 (23rd Edition, 1982).

8

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. § 636 and Fed.R.Civ.P.72. Any such objections should be filed with the Clerk of the District Court by June __18th__, 2010. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this __28th__ day of May, 2010.

*/s/ Valerie K. Couch*
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE